UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OLANDUS HILL, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   CASE No. 12-CV-159-FHM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration[1], | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Olandus Hill, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Olandus Hill's application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Charles Headrick was held on January 15, 2010. By decision dated November 5, 2010, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on January 17, 2012. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner.

## **Background**

Plaintiff was 47 years old on the alleged date of onset of disability and 52 on the date of the denial decision. Plaintiff dropped out of high school in the 9th grade and his past work experience includes retail attendant, filter cleaner, laborer, produce clerk, janitor, groundskeeper, packer, and car detailer. He claims to have become disabled as a result of hepatitis C, diabetes, hypertension, arthritis, mental health/paranoid schizophrenia. [R. 280]. Plaintiff testified that he has a long history of alcohol and substance abuse. Though he claims to be in remission, he has occasional relapses. [Dkt. 17, p. 1; R. 183, 473, 489,

497, 537, 552].   Plaintiff claims to be illiterate, suffers from both auditory and visual hallucinations, and does not work well with others. [R. 188].

## The ALJ's Decision

The ALJ determined that Plaintiff has severe impairments relating to hepatitis C and hypertension. [R. 25].  The ALJ determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b).  Plaintiff can perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation. [R. 26].

Although Plaintiff was unable to perform his past relevant work, based on the testimony of the vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 30]. Accordingly, the ALJ determined that Plaintiff was not disabled.  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled.  *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to properly consider the medical source and non-medical source evidence; and 2) failed to perform a proper credibility determination.

## **Analysis**

### Medical Source Opinions

Plaintiff asserts that the opinion of his treating psychiatrist, Dr. Jeffrey Bryan Cates, D.O.[3] that he is disabled was improperly considered by the ALJ. [Dkt. 17, p. 2-3]. This assertion is unsupported by the record. The record does not contain an opinion by Dr. Cates that Plaintiff is disabled. The only opinion that Dr. Cates offers is contained on a Mental Status form signed by him. [R. 466]. There Dr. Cates states Plaintiff has difficulty with concentration and comprehension but can reason and respond taking more time than most individuals. He also states Plaintiff can carry out simple tasks with reminders and may be able to complete complex tasks. The form also relates Plaintiff's report that he responds to work pressure and supervision by becoming stressed and that he has no problem with co-workers. *Id.* The ALJ referred to this form in his decision. [R. 29]. To the extent that the form Dr. Cates signed can be read as expressing an opinion, the undersigned finds that the opinion is encompassed in the ALJ's RFC findings.

The two notes Plaintiff cited in the medical record as establishing that Dr. Cates considers Plaintiff to be disabled are not authored or signed by Dr. Cates. [R. 481, 557]. Nor do those notes contain the type of information required to constitute a treating physician's opinion. In sum, contrary to Plaintiff's assertions, the ALJ did not reject Dr. Cates' opinion, nor did he rely on the consultative examiners and medical consultants' opinions over of Dr. Cates'. Dr. Cates simply did not render an opinion to be weighed. Further, Dr. Cates did not place any restrictions or limitations upon the Plaintiff that were

---

[3] In the decision, the ALJ mistakenly refers to Dr. Jeffrey Bryan Cates, D.O., as Bryan Carter, D.O. [R. 29].

not reflected in the ALJ's RFC. Additionally, Plaintiff has not pointed to any information that would suggest Dr. Cates' conclusions differ from any of the ALJ's findings.

There is no merit to Plaintiff's assertion that the ALJ failed to weigh all opinions in the record. The only opinions concerning Plaintiff's ability to work are those of the State Disability Determination Service experts who reviewed Plaintiff's medical record and rendered opinions about Plaintiff's ability to work. [R. 465, 505, 506]. The ALJ stated he gave those opinions "great weight." [R. 29]. Since there were no other opinions, there was no need for the ALJ to determine which opinions he was going to accept.

### Global Assessment of Function

Plaintiff argues that no treating source has assigned a global assessment of function (GAF)[4] score above 50 and the ALJ cannot ignore those scores.[5] [Dkt. 17, p. 4]. While GAF scores are not determinative of mental disability, they are relevant evidence that should be considered along with all other medical evidence. Contrary to Plaintiff's assertions Plaintiff's GAF scores were considered by the ALJ:

---

[4] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quotation omitted). "A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Id.* (quotation, brackets and ellipsis omitted).

[5] Plaintiff's statement that "no treating source has assigned a current GAF above 50" is misleading. [Dkt. 17, p. 4]. The record indicates that on June 4, 2009, Dr. Michael D. Morgan, Psy.D., the consultative mental examiner, assigned a GAF score of 66-70. [R. 440-444].

> The claimant had begun mental health treatment with Family Services in January 2009. His GAF at that time was reported to be 42. His dependence on drugs was noted to be in full remission and was assessed to rule out schizophrenia. His diagnoses were major depression disorder, kleptomania, alcohol dependence, and opioid dependence. In April 2009 the claimant reported compliance with his medications (Exhibit 6F).

[R. 28]. The ALJ also noted, "The claimant had random GAF scores in the 40's but they are not sufficient in number to establish a pattern." [R. 29].

A low GAF score does not alone determine disability, but is merely a piece of evidence to be considered with the rest of the record. The Tenth Circuit has explained it is not necessary for the ALJ to specifically mention or adopt every GAF score in his decision. *See Luttrell v. Astrue,* 453 Fed.Appx 786, 791-92 (10th Cir. 2011),[6] *Butler v. Astrue,* 412 Fed.Appx 144, 147 (10th Cir. 2011), *Holcomb v. Astrue,* 389 Fed.Appx. 757, 759 (10th Cir. 2010)(GAF scores taken alone do not establish an impairment serious enough to preclude an ability to work and when the scores are the opinion of providers who are not acceptable medical sources, they cannot by themselves establish a medically determinable impairment, constitute a medical opinion, or be considered the opinions of a treating source). The GAF scores in this case were not linked to any work-related limitations identified in the treatment records. The ALJ clearly considered the GAF scores. The RFC included restrictions to accommodate Plaintiff's limitations which are supported by substantial evidence. The court finds no error in the ALJ's treatment of the GAF scores.

---

[6] The court is aware that Plaintiff's counsel was counsel in the *Luttrell* case, in *Strickland v. Astrue*, 2012 WL 3935755, *7 (10th Cir.) and also counsel in *Holcomb.*

Plaintiff also asserts that the ALJ ignored testimony of the vocational expert that GAF scores in the 40's depict an individual who cannot work. [Dkt. 17, p. 4]. The hypothetical posed to the vocational expert asked whether Plaintiff could return to his former work assuming the claimant's testimony to be credible and that he had GAF scores of less than 50. The vocational expert responded he could not return to such work partially because the GAF scores would indicate serious problems in maintaining work-like activity. [R. 195]. The court finds that the ALJ did not ignore the testimony of the vocational expert. The vocational expert's testimony related to a hypothetical that contained assumptions that were not accepted as true by the ALJ as the ALJ found that Plaintiff's testimony was not credible. Further, the ALJ did not accept the GAF scores as establishing a pattern. The court finds no error in the ALJ's treatment of the vocational expert's testimony.

Plaintiff asserts the ALJ erred as he found the consultative examiners' and non-examining, non-treating reviewers' reports were due great weight because they are consistent with his own residual functional capacity (RFC). [Dkt. 17, p. 5]. Although the RFC is announced in the written decision before the ALJ's discussion of the evidence, Plaintiff has offered nothing that persuades the court that the ALJ failed to properly consider the evidence. [7]

### Hypothetical Questions

During the hearing, the ALJ asked the vocational expert to assume a hypothetical claimant with the physical capacity to perform a full range of light work who has the limitations assessed in exhibit 11F — which is a 2009 mental RFC form completed by Dr.

---

[7] The court declines to address Plaintiff's run-on assertions of error that are not accompanied by any cogent argument or reference to the record. [Dkt. 17, p. 5].

Sharon Taber, Ph.D. [R. 461-464]. On the form, Dr. Taber indicated that Plaintiff had marked limitations in his ability to understand and remember detailed instructions, in his ability to carry out detailed instructions, and in his ability to interact appropriately with the general public. In all other areas, Plaintiff was found not to be significantly limited. Dr. Taber concluded that Plaintiff could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation. [R. 463]. These are the same limitations contained in the decisional RFC. [R. 26].

The undersigned does not favor the practice of having a vocational expert consult exhibits to discern the Plaintiff's limitations instead of orally framing a hypothetical question to the vocational expert. Asking a vocational expert to glean limitations included in a hypothetical question from an exhibit invites confusion and needlessly introduces an opportunity for miscommunication and misunderstanding. These potential problems are avoided when the ALJ formulates the limitations and verbally expresses them to the vocational expert. However, where there is no evidence of confusion or misunderstanding use of such exhibits is not error. *See Boehm v. Astrue,* 2013 WL 451067 *3 (10th Cir.)(finding no error in relying on RFC form to provide limitations for hypothetical). In the present case the record demonstrates there was no confusion or misunderstanding.

There is no merit to Plaintiff's contention that the ALJ erred by failing to specifically outline the amount of standing, sitting, walking, lifting, carrying, pushing, pulling, or other physical functions Plaintiff could perform in the hypothetical question posed to the vocational expert. [Dkt. 17, p. 5]. The ALJ found that Plaintiff could perform light work without any other physical limitation. The term light work is defined in the Regulations, 20

C.F.R. §§ 404.1567, 416.967, and is a term familiar to vocational experts and others who practice in the area of Social Security disability law. The court finds that the ALJ's hypothetical questions concerning Plaintiff's physical and mental limitations contains the limitations included in the RFC and that those limitations are supported by substantial evidence.

Plaintiff argues that the opinion of Plaintiff's father and an agency clerk should be considered as an "other source" under the Regulations and evaluated pursuant to Social Security Ruling (*SSR*) 06-3p, 2006 WL 2329939. The Social Security regulations distinguish between "medical sources" and "other sources." 20 C.F.R. §§ 404.1527, 416.927. *SSR* 06-3p acknowledges information from "other sources" cannot establish the existence of a medically determinable impairment. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function, therefore "other sources" must be evaluated under the factors contained in *SSR 06-3p*, 2006 WL 2329939 at *4-5. The evaluation of an opinion will depend on the particular facts of the case and the case must be adjudicated on its merits based on a consideration of the probative value of the opinions and weighing of all the evidence in the case. *Id.* at *5.

Plaintiff contends that the *Function Report –Adult–Third Party*, [R. 263-270], which was completed by his father should be considered with the factors identified in *SSR* 06-3p. [Dkt. 17, p. 6]. Plaintiff makes reference to the *Function Report –Adult–Third Party* but fails to identify any opinions that should have been considered by the ALJ. Plaintiff also asserts that the ALJ ignored the observations of the agency clerk as he did not discuss them. [Dkt.

17, p. 6-7; R. 251-254]. The observations provided by the agency clerk were just that – observations. The one time contact with the agency clerk does not contain any opinions that were required to be evaluated under *SSR* 06-3p. The ALJ is not required to discuss every piece of evidence in the record. *Hamlin v. Barnhart,* 365 F.3d 1208, 1217 (10th Cir. 2004). The ALJ stated he carefully considered the entire record. [R. 25]. The Tenth Circuit has stated it will take the ALJ at his word when the entirety of the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he adequately considered the claimant's impairments. *Wall v. Astrue,* 561 F.3d 1048, 1070 (10th Cir. 2009). The court finds that the ALJ's decision demonstrates he adequately considered the evidence.

## Credibility

Plaintiff argues that the ALJ's decision should be reversed because it contains stock boilerplate language. The Tenth Circuit has made it clear that in the absence of a more thorough analysis, the use of boilerplate language is not sufficient to support an ALJ's credibility determination. However, the Tenth Circuit has made it equally clear that when the ALJ provides specific reasons for his credibility determination and links the credibility determination to the evidence, the presence of boilerplate language will not require remand. *Cf. Boehm v. Astrue,* 2013 WL 541067 at *2 (10th Cir. 2013)(rejecting the same argument advanced in this case in another appeal argued by Plaintiff's counsel); *Polson v. Astrue,* 2013 WL 238849 at *2 (10th Cir. 2013 (same); *Strickland v. Astrue,* 2013 WL 3935755 at *7 (10th Cir. 2012)(same). Despite his use of "boilerplate" language, the ALJ clearly and affirmatively linked his adverse determination of Plaintiff's credibility to substantial record evidence.

The ALJ listed a number of factors for his credibility determination. The court finds that the ALJ tied his credibility findings to the evidence and the credibility finding is supported by substantial evidence.

## Conclusion

The decision of the Commissioner is AFFIRMED.

SO ORDERED this 24th day of June, 2013.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE